Michael BALDIGO, Plaintiff-Appellant,

v.

POSTMASTER GENERAL OF the UNITED STATES of America, Defendant-Appellee.

No. 74–1587.

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 30, 1974.

Decided April 7, 1975.

Michael Baldigo, pro se.

John R. Wilks, U. S. Atty., Fort Wayne, Ind., Richard L. Kieser, South Bend, Ind., for defendant-appellee.

Before FAIRCHILD, CUMMINGS, and PELL, Circuit Judges.

PELL, Circuit Judge.

This is an appeal from the dismissal of Baldigo's *pro se* complaint following the sustaining of the defendant's motion denominated as a motion for judgment on the pleadings.

The complaint is abbreviated. In substance, it alleges that the defendant "lawfully issued" on May 14, 1970 a duly requested postal prohibitory order No. 008586 under 39 U.S.C. § 4009(b) (Now 39 U.S.C. § 3008); that about April 5, 1971, based on claims by the recipient of the order, the defendant determined that the materials upon which the order was issued had been "solicited" by the recipient of the materials and on this basis the defendant had rescinded the prohibitory order; and that the prohibitory order "was unlawfully rescinded on the basis of solicitation."

The answer of the defendant is equally abbreviated. It admits that plaintiff had requested a prohibitory order but seems to indicate that the requested order had been denied (rather than having been rescinded) and one of the reasons was "that the materials had been solicited." There is no clear reference as to what materials are involved. The second count of the answer upon which the motion for judgment on the pleadings was subsequently based alleges that the statute which provides for prohibitory orders does not apply to solicited mail matter and that such an interpretation "is contrary to law to the natural interpretation of the English language and to the normal reason of man." It was further alleged in the answer that the plaintiff's complaint did not deny that the materials were unsolicited.

Looking further at the procedural aspects of the case in the district court, we note that the second count of the answer was in effect a motion for dismissal pursuant to Rule 12(b)(6), Fed.R.Civ.P., on the basis of the failure to state a claim upon which relief can be granted. The subsequently filed and denominated motion for judgment on the pleadings which is provided for in Rule 12(c) added nothing to the picture but relied solely on the second count of the complaint. While under Rule 12(c), the motion for judgment on the pleadings may be treated as a motion for summary judgment, which treatment is also available under Rule 12(b)(6), we do not find that the case was given summary judgment treatment by the presentation of matters outside the pleadings. The district court's order and memorandum clearly demonstrate that the plaintiff's complaint per se was considered as putting forth the position that solicitation of mailed material was not ground for refusal to issue a prohibitory order. The district court concluded that it "must grant the defendant's motion to dismiss under Rule 12(b)(6) of the Fed.R.Civ.P."

■ We therefore on this appeal look only at the complaint. On that basis, we are unable to determine that the plaintiff might not have been able to demon-

strate facts entitling him to the reinstatement of the prohibitory order he claimed had been issued. On the posture of the pleadings before us, we must accept the interpretation of the plaintiff's complaint most favorable to him. In determining whether a motion to dismiss pursuant to Rule 12(b)(6) should be granted, the accepted rule is "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

All that the complaint in essence states is that the prohibitory order (and for the present purposes we must assume that a prohibitory order was in fact issued) was cancelled solely on the basis that the defendant had determined *ex parte* that the materials upon which the order was issued had been solicited. The plaintiff from other documents in the file, particularly copies of documents accompanying a request for admissions under Rule 36, apparently is taking the position that even though a person solicits material, if he thereafter determines that the materials upon receipt were in his subjective judgment lewd and salacious in character, he was entitled to a prohibitory order against any future mailing to him.

However, insofar, as the complaint itself is concerned we have no way of knowing whether in fact the plaintiff had ever solicited any mailing from the mailer against whom the order was directed. All that the complaint alleges is that the mailer claimed there was solicitation. If by way of summary judgment procedures or by way of evidentiary proof on trial, plaintiff could show that he had never at any time solicited mailings from the particular source there would be no question that the prohibitory order had been improperly rescinded. Accordingly, pursuant to Rule 2, Fed.R. App.P., we reverse upon the briefs and record, and without oral argument.

■ The plaintiff's *pro se* brief on this appeal addresses itself solely to the effect of solicitation as did his motion for summary judgment below and the district court therefore in all probability had no difficulty in reading the admission of some kind of solicitation into the complaint. We are of the opinion that even if the complaint could be interpreted as containing an admission that the plaintiff solicited some kind of material from a mailer that he therefore and thereafter should not be permanently deprived from resort to the statutory prohibitory order.

We do not find that the particular issue of the effect of solicitation has been decided. The statute was before the Supreme Court which held the act constitutional against a First Amendment challenge in Rowan v. Post Office Department, 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1969). After balancing the right to communicate with "the right of every person 'to be let alone,'" the Court concluded that "a mailer's right to communicate must stop at the mailbox of an unreceptive addressee." *Rowan, supra* at 736–7, 90 S.Ct. at 1490. *Rowan* did not address the question of the scope of the prohibitory orders issued pursuant to 39 U.S.C. § 3008 or its predecessor, 39 U.S.C. § 4009.

Assuming *arguendo* that there had been some sort of solicitation, it appears to us that this in itself is not determinative of the question of whether a prohibitory order should or should not be issued. The district court found support for its position in language in *Rowan* as follows:

"Section 4009 was a response to public and congressional concern with the use of mail facilities to distribute unsolicited advertisements that recipients found to be offensive because of their lewd and salacious character. Such mail was found to be pressed upon minors as well as adults who did not seek and did not want it. . . . A declared objective of Congress was to protect minors and the privacy of homes from such material and to place

the judgment of what constitutes an offensive invasion of those interests in the hands of the addressee." 397 U.S. at 731–32, 90 S.Ct. at 1487.

Mr. Chief Justice Burger in speaking for the Court was only referring to the legislative history and we do not find this to be the "reasoning" of the opinion as it was characterized by the district court. The opinion, as we have noted, did not address the present issue. Even though Congress may have been motivated by the substantial number of complaints from individuals who received mail which they found offensive and which came without any request on their part, we must first look at the statute to determine its scope. The language is not ambiguous and is not confined to unsolicited mail:

> "(a) Whoever for himself, or by his agents or assigns, mails or causes to be mailed any pandering advertisement which offers for sale matter which the addressee in his sole discretion believes to be erotically arousing or sexually provocative shall be subject to an order of the Postmaster General to refrain from further mailings of such materials to designated addressees thereof." 39 U.S.C. § 4009

■ At the outset of further analysis of the scope of the statute, and at the risk of stating the obvious, mail which has been delivered prior to the issuance of a prohibitory order, whether such mail had or had not been solicited, is not within the coverage of the act. It is a *fait accompli*, and the "future mailings" language of the statute indicates that no retroactive effect of a prohibitory order was contemplated.

When, however, an attempt is made to put a stop to future mailings and the claim is asserted that the original mailing was in response to a request from the recipient, the factual situation might fit in either of two basic categories.

The first would involve what might be termed the completely innocent solicitor, for example, if an advertisement proffered a tract described only as *The Secret of Good Health* and when sent for it proved to be an exposition of the advantages of sexual promiscuity with graphic illustrations. We have no difficulty in determining that such a recipient, if there was no reasonable objective basis for an awareness of the nature of the material, would be entitled to a prohibitory order as to future mailings. It is not possible to tell from the complaint before us whether Baldigo may fit into this category.

The second category poses greater problems, not only of coverage, but of definition. Since only the purely subjective standard of the recipient is involved in determining what is "erotically arousing or sexually provocative," advertising which would not alert one person that he was soliciting mail that he would find upon receipt to be in his eyes truly facinorous would make it perfectly apparent to another individual that the material sent for would be appealing to prurient interests.

The question is, and again we are unable to tell from the complaint where Baldigo fits in the picture, is whether he who knowingly sends for obviously salacious material is thereby precluded permanently from closing the door to future mailings via the statute. While we may have little sympathy for one who is getting just what he originally asked for, nevertheless, we must also recognize that circumstances may change, e. g., the bachelor may marry and have children, or even though retaining the single status a person's interests may change.

In the light of the clear language of the statute, it is our opinion that no differentiation between the various shades of solicitors is necessary. Even though he may have requested the original mailing, he is not precluded from stopping future mailings. "Congress provided this sweeping power not only to protect privacy but to avoid possible constitutional questions that might arise from vesting the power to make any discretionary evaluation of the material in a governmental official." *Rowan, supra* at 737, 90 S.Ct. at 1491. An assessment of whether there was a knowing solicitation

would cast upon the postal service the discretionary evaluation which the Court has found Congress did not intend.

■ Finally, we note what at least is a suggestion that Baldigo had been involved in several prohibitory orders. The issue is not now before us but may become material in further proceedings. Notwithstanding the result we reach in this opinion, and even though the standard to be applied by the recipient is purely subjective, we do not conceive that the statutory shield should invariably be available to one clearly acting without good faith. Thus, one who continuously solicits material and who equally continuously then seeks prohibitory orders might establish a sufficient pattern of abuse to deprive himself of the statutory protection.

In accordance with the foregoing opinion, the judgment of the district court is reversed and this cause is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

FAIRCHILD, Chief Judge (dissenting).

I respectfully dissent.

The entire complaint, omitting formal parts, is as follows:

"Comes now Plaintiff and for cause of action on a Federal question would show:

(1) That on May 14, 1970 Defendant lawfully issued a duly requested Postal Prohibitory Order # 008586 under Public Law 90–206 US Code Sect. 4009(b) on behalf of a legal trade name owned by Plaintiff;

(2) That on or about April 5, 1971, based on claims by the recipient of the Order, Defendant determined that the materials upon which the Order was issued had been 'solicited' by the recipient of the materials and on this basis Defendant rescinded such Order;

(3) That the anti-pandering statutes show a conspicuous absence of the word 'solicited' as a means by which pornographic mailers could claim immunity from law enforcement;

(4) That the Order was unlawfully rescinded on the basis of 'solicitation';

THEREFORE, Plaintiff prays the Court to restore the Order retroactively to April 5, 1971."

In my opinion the district court accurately identified the issue and correctly disposed of it, as follows:

"Plaintiff's entire claim rests on the assertion that solicitation is not a ground for refusal to issue a prohibitory order under 39 U.S.C. § 4009 (now § 3008). The Court cannot agree with the plaintiff's contention but instead follows the reasoning set out in Rowan v. Post Office Dept., 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1969):

Section 4009 was a response to public and congressional concern with use of mail facilities to distribute unsolicited advertisements that recipients found to be offensive because of their lewd and salacious character. Such mail was found to be pressed upon minors as well as adults who did not seek and did not want it . . . A declared objective of Congress was to protect minors and the privacy of homes from such material and to place the judgment of what constitutes an offensive invasion of those interests in the hands of the addressee.

"To say that § 3008 applied to solicited mail as well as unsolicited mail would be going beyond the purpose intended by Congress and would also be an unreasonable interpretation. To solicit mail is an invitation to have it sent to you, and the receipt of it is not an invasion of the privacy protected by 39 U.S.C. § 3008."

I find it difficult to suppose that Congress intended that one who asks that material be mailed to him can invoke the power of government to forbid future mail communication on the basis that he dislikes what he solicited and received.

Senate Report No. 801 of the Post Office and Civil Service Committee, accompanying the bill which became the Postal Revenue and Salary Act of 1967, said, with reference to this provision:

"The Government should not restrict the right of free speech. At the same time, it should not act as the instrumentality by which unwanted and unsolicited mail matter is forced upon an unwilling citizen. The committee is convinced that no user of the mail has the right to force upon an unwilling recipient the type of mail matter covered by title III and that the U.S. post office is not required to act as the instrumentality by which a mail user, over the objection of the recipient, invades the home and mailbox of a citizen." U.S. Code Congressional and Administrative News, 90th Congress, First Session, 1967, p. 2295.

The interpretation being followed by the Postmaster General in this case is a reasonable one, and he is the officer charged with the administration of the statute.

There is, of course, no requirement that the material received be obscene, unlawful, or otherwise improper by any objective test, only that the addressee wishes to object. This, it seems to me, is another reason for restrictive rather than expansive interpretation of the addressee's right to invoke the power of government on the basis of a mailing which he himself requested.